UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LATONYA WILLIS,

    Plaintiff,                       CASE NO. 06-CV-13686

v.                               DISTRICT JUDGE THOMAS LUDINGTON
                              MAGISTRATE JUDGE CHARLES BINDER
VALLEY RESIDENTIAL SERVICES,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Dkt. 43)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED**.[1]

## II.   REPORT

### A.   Background

By order of United States District Judge Thomas Ludington, this racial discrimination employment case brought under Title VII was referred to the undersigned magistrate judge for pretrial case management on September 6, 2006. (Dkt. 3.)

Plaintiff Latonya Willis, a black woman, was initially hired by Defendant Valley Residential Services ("Valley") as a part-time employee on May 2, 2001, and was given full-time employment on September 1, 2002. (Dkt. 43 at 3.) Plaintiff was provided with an employee

---

[1] I note that there is a pending Motion to Compel Discovery (Dkt. 36) which would be rendered moot if the Court adopts this Report.

handbook, which stated that it does not constitute an express or implied contract, and she signed an acknowledgment of reading the same on May 4, 2001. (*Id.*, Ex. 1 at 1.) In addition, the handbook states that the "employee understands that the nature of the employment relationship is 'at-will.' This means that at the sole discretion of either the employer or the employee, the relationship may be terminated with or without cause and with or without notice." (*Id.* at 2.) The attendance policy indicates that excessive tardiness or absenteeism would result in termination. (*Id.* at Ex. 2.) The handbook further provides that "[a]ny employee who is absent two (2) consecutive schedule [sic] work days without reporting their absence to their supervisor will be considered a 'voluntary quit.'" (*Id.*) Plaintiff was terminated from employment on February 4, 2005, for a second offense of using profanity in front of customers, but was rehired on March 17, 2005. (*Id.* at 4.)

Defendants indicate that Plaintiff was ultimately terminated per the attendance policy for failing to come to work for two consecutive work days without calling in, i.e., June 23, 2005, and June 27, 2005. (Dkt. 43 at 4; Ex. 3.) On June 30, 2005, Plaintiff came in to work to pick up her check, at which time she was presented with, and according to Plaintiff, forced to sign, an "Exit Interview Form." (*Id.* at Ex. 3; Dkt. 45 at 2.)

Plaintiff filed a "Charge of Discrimination" with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC") on September 15, 2005. (Dkt. 43 at Ex. 4.) Plaintiff alleged that she was demoted on November 29, 2004, "allegedly for a medicinal error" but that the real reason was racial discrimination "because a White person made the same mistake and was not discharged." (*Id.*) In addition, she claimed that she was discharged on June 20, 2005, "without reason" and "due to [her] race because [she] was never

disciplined and [was] an exemplary employee." (*Id.*) The EEOC dismissed Plaintiff's case and notified her of her appellate rights, checking the box that states:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(*Id.*) Plaintiff contends that since the EEOC investigator did not check the box which provides for denial based on failure to state a claim, that the investigator was not "100% sure there was no discrimination involved." (Dkt. 45 at 3 (unnumbered).)

Plaintiff's complaint, which was filed *pro se,* asserts that she was wrongfully terminated and the following "other acts" of race discrimination:

> I was demoted on 11-29-04 for reasons that were untrue. My pay was cut and my job was given to a less qualified person that was not of my race and she was getting paid more.

(Dkt. 1 at 2.) Plaintiff attached an 8-page narrative to her complaint wherein she states:

> I was terminated by Chris Ellis over the phone. She stated I was being terminated on the grounds that I had discussed a meeting that was held on 2-3-2005 with staff. The meeting was held on 2-3-2005 which consisted of a lot of major disrespect directed towards me from Tricia Shelson, Leah Horn, and Chris Eli. These three individuals were head staff at the time of the meeting. It took at least two weeks before I received written notice of my termination and this was mailed to me from Nancy Beack the Executive Director and the reason that was wrong, because she was suppose to be breaking the ice between me and the Home Manager but instead was working against me. I also feel I was a target because on 2-1-2005 I found a med error that was caused by the Home Manager and the Assistant Manager and I reported it. . . . [W]e had a meeting [on 2-3-2005] [and] at that meeting I was completely disrespected . . . the Home Manager [] stated that they were trying to fire me. . . . [I was informed that my] position was being demoted due to continuous problems. I didn't understand it. I was a good worker . . . my pay was cut . . . . Not only that, my position was given to someone that was less qualified. I was expected to train her and she was making more than me. . . . But on Nov. 29, 2004, my heart was ripped apart when the Home Manager . . . handed me a counseling form stating Valley Residential had work for me. I called them to see what was going on and they stated they didn't have work available anymore. I wasn't interested in working for them anymore anyways. I had to follow up with them or my unemployment

3

would have been terminated. . . . Now I must state the grounds of my lawsuit and that I should be compensated for pain and suffering . . . [and] the way I was treated by a company that I loved and trusted. . . . Now I'm back at square one, struggling, depressed and without a job. I started working for Valley Residential in May 2001 I started off at the pay rate of $7.70 after I finished my classes through mental health, after I finished my classes I was given a 25 cent raise. . . . In March I was promoted to Assistant Home Manager that is when all of my problems started. My Home Manager of my termination was stated I was fired for insubordination. . . Nancy stated she feel [sic] I was wrongfully terminated and she offered my job back. I took my job back because I was behind on bills. . . . I worked for about 2 months. I was terminated from that employer, I don't know why. <u>All I know I was calling in because I was sick.</u> And I went in one day to get my check and the Assistant Manager told me I had to sign a paper or I wasn't gonna get my check and turn in my key. I did just as I was told – and I left. And that was the last I heard from that company until the month of April 2005. I was sent a letter from the unemployment office . . . and then I started getting sick. . . . I was put on some more anti-depressant because the doctor stated I was having an anxiety attack. The next day which was 2-4-05 I was scheduled to work from 2-10 pm I was called over the phone and terminated by Chris Ellis. She stated I was being fired for discussing the meeting we had on 2-3-05 with staff. And I know I hadn't discussed anything . . . so the person she say I discussed the meeting with wrote me a letter and stated that I hadn't discussed anything and I still wasn't given my job back.

(Dkt. 1 at 4-11 (emphasis added).) Plaintiff also concedes that she did not disclose that she had been convicted of a crime on her employment application "because that happened in 1990 and I didn't think it mattered." (Dkt. 45 at 4 (unnumbered).)

Defendant has filed the instant motion for summary judgment (Dkt. 43)[2] and Plaintiff has responded (Dkt. 45). Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

**B.     Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party

---

[2]It appears that this motion is on the docket twice, once with defense counsel's signature lines blank (Dkt. 40) and once with them completed (Dkt. 43).

4

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where a plaintiff is proceeding without the assistance of counsel, as in this case, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**C.    Discussion**

Plaintiff avers that she was wrongfully "demoted on 11-9-04 for reasons that were untrue, [her] pay was cut and [her] job was given to a less qualified person that was not of [her] race and

6

. . . was getting paid more" and that she was terminated from employment because of her race. (Dkt. 1.)

Title VII, 42 U.S.C. § 2000 *et seq.*, prohibits employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). Absent direct evidence of racial discrimination, plaintiffs bear the initial burden of production under the *McDonnell Douglas*[3] burden-shifting scheme to show a prima facie case of discrimination. *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). The elements of a prima facie case under Title VII are: (1) plaintiff is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for the position at issue, and (4) she was replaced by someone outside the protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 470 (6th Cir. 2004); *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 728 (6th Cir. 2004).

If a plaintiff meets this initial burden, this "'creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged [] action.'" *Id.* (quoting *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). If the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiffs to "'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.*

A proffered reason is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."

---

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

*Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991); *Young v. Sabbatine,* No. 99-6336, 2000 WL 1888672,*4 (6th Cir. Dec. 19, 2000). Intentional discrimination may be inferred when a prima facie case is established and there is evidence of pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993))).

The salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of his or her membership in a protected class and treated less favorably than those outside the class, not whether the plaintiff was treated less favorably than "someone's general standard of equitable treatment." *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988) (citations omitted). In the instant complaint, although Plaintiff alleges racial discrimination and states that she was replaced by someone who was less qualified and is not black, her narrative never mentions race but instead focuses only on the fact that she was "disrespected," wrongfully accused of improperly discussing a February 2005 meeting, wrongfully accused of insubordination, and unfairly accused of unexcused absences from work when she was sick. (Dkt. 1 at 4-11.) I thus suggest that Plaintiff's complaint fails to allege anything beyond Defendant's failure to meet her "general standard of equitable treatment." *Batts, supra*.

Plaintiff correctly asserts that she is a member of a protected class and that she was terminated. She also asserts that she was qualified and was replaced by a less-qualified person outside of her protected class. (Dkt. 1.) Although Plaintiff had the requisite skills to do the job

and had performed satisfactorily in the past, prior to termination, she had been "calling in because [she] was sick." (*Id.* at 9.) In addition, Plaintiff's response to the instant motion admits that she did not disclose on her application that she had been "convicted of a crime . . . because that happened in 1990 and I didn't think it mattered." (Dkt. 45 at 4 (unnumbered).) Therefore, I suggest that she was not qualified because she had missed more than three consecutive work days and she had failed to disclose her past conviction. *Fullman v. Potter*, 480 F. Supp. 2d 782, 790 (E.D. Pa. 2007) (holding that "because [plaintiff] was terminated for cause, he has not met the second element by showing that he was qualified for the position from which he was terminated.")

Even assuming, *arguendo*, that Plaintiff has articulated a prima facie case, I suggest that Plaintiff cannot withstand summary judgment because Defendant has come forth with legitimate, nondiscriminatory reasons for terminating Plaintiff from her "at-will" employment relationship – insubordination, absences from work, and failure to disclose a criminal conviction. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1101, 1116 (6th Cir. 2001) (increasingly poor job performance" can constitute a legitimate nondiscriminatory reason); *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 799 (3rd Cir. 2003) (arrest for selling drugs was legitimate, non-discriminatory reason to not rehire); *Getachew v. S&K Famous Brands, Inc.,* No. 2:06-CV-633, 2008 WL 533806, *5 (S.D. Ohio Feb. 27, 2008) (falsification on employment application is a legitimate, nondiscriminatory reason); *Bryant v. Mahoning County Bd. Of Comm'rs*, No. 4:05CV2783, 2007 WL 1725314, *7 (N.D. Ohio June 13, 2007) (absenteeism is a legitimate, nondiscriminatory reason).

I further suggest that Plaintiff has not established that Defendant's reasons have no basis in fact. To the contrary, Plaintiff has admitted two of the three reasons are true, i.e., absences from work and failure to disclose a criminal conviction. (Dkt. 1 at 9; Dkt. 45 at 4 (unnumbered).)

Furthermore, Plaintiff has not provided any evidence that these reasons did not actually motivate Defendants nor could she argue that they are insufficient to warrant termination since the Employee Handbook states that the absences alone are grounds for termination. (Dkt. 43 at Ex. 2.) I suggest that Plaintiff has not provided evidence to create an issue of fact regarding pretext, and I therefore suggest that Defendant is entitled to summary judgment. *See Dews, supra.*

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                 s/ *Charles E. Binder*
                                 CHARLES E. BINDER
Dated: March 24, 2008               United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on John J. Shinners, served on Latonya Willis by first class mail, and served on District Judge Ludington in the traditional manner.

Date: March 24, 2008         By     s/Patricia T. Morris
                                        Law Clerk to Magistrate Judge Binder